**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| MARY L. VERMILLION; JAY LAND LTD. CO.; YATES RANCH PROPERTY LLC; and the INDEPENDENT PETROLEUM ASSOCIATION OF NEW MEXICO,<br><br>                          Plaintiffs,<br><br>          v.<br><br>MORA COUNTY, NEW MEXICO; MORA COUNTY BOARD OF COUNTY COMMISSIONERS; PAULA A. GARCIA, Mora County Commissioner, District 1; JOHN P. OLIVAS, Chairman and Mora County Commissioner, District 2; ALFONSO J. GRIEGO, Vice-Chairman and Mora County Commissioner, District 3,<br><br>                          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.<br><br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiffs, Mary L. Vermillion, JAY Land Ltd. Co. ("JAY"), Yates Ranch Property LLC ("Yates"), and the Independent Petroleum Association of New Mexico ("IPANM") (collectively "Plaintiffs") by and through their undersigned attorneys, hereby file this Complaint against Defendants and allege as follows:

## NATURE OF THE CLAIMS

1.      This civil rights lawsuit seeks declaratory and permanent injunctive relief to redress and prevent the further deprivation of Plaintiffs' rights, as guaranteed by the First, Fifth, and Fourteenth Amendments to the Constitution of the United States, by Defendants acting under color of state law.

2.     Plaintiffs' rights have been violated by Defendants' enactment of Mora County Ordinance 2013-01 ("Ordinance"), which expressly prohibits all hydrocarbon extraction within Mora County and all other activities necessary to hydrocarbon extraction.  The Ordinance further eliminates corporate Plaintiffs' rights under the First and Fifth Amendments to the United States Constitution and the corresponding rights under the New Mexico Constitution.  The Ordinance restricts the rights of Plaintiffs to invoke applicable New Mexico state laws that preempt Mora County's authority to enact or enforce the Ordinance.  Therefore, Plaintiffs seek declaratory and permanent injunctive relief to abate and correct Defendants' unconstitutional actions.

## JURISDICTION AND VENUE

3.     This Court has subject-matter jurisdiction, pursuant to 28 U.S.C. § 1331, because the matter in controversy arises under the Constitution and laws of the United States, including, but not limited to, the First, Fifth, and Fourteenth Amendments to the United States Constitution.

4.     This case is also brought under 42 U.S.C. § 1983, which provides for redress of the deprivation, under color of state law, of rights, privileges, and immunities secured to Plaintiffs by the United States Constitution, particularly the First, Fifth, and Fourteenth Amendments thereto.  Thus, this Court also has subject-matter jurisdiction under 28 U.S.C. § 1343(a)(3), (4).

5.     This Court also has supplemental jurisdiction over Plaintiffs' state law claims because those claims are so related to Plaintiffs' federal claims that they form part of the same case or controversy under Article III of the United States Constitution.  28 U.S.C. § 1367.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because it is the judicial district where Defendants reside, and in "which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b).

<u>**PARTIES**</u>

7.      Plaintiff Mary L. Vermillion owns in fee 0.775 acres, more or less within projected Section 9, Township 21 North, Range 17 East, N.M.P.M in Mora County, New Mexico.  As the owner in fee simple, Ms. Vermillion also owns the mineral estate underlying this tract.  This mineral estate includes the oil and gas estate.  The oil and gas estate is a property interest protected by the Fifth and Fourteenth Amendments to the United States Constitution.  But for the Ordinance, Ms. Vermillion would seek to lease her oil and gas estate to a corporation for the purposes of exploring for and extracting the oil and natural gas.

8.      Plaintiffs JAY and Yates own in fee simple, as tenants in common 125,000 acres, more or less, within  Mora County, New Mexico.  This property is known as the Ojo Feliz Ranch.  As fee simple owners, JAY and Yates also own the mineral estate underlying this tract.  The mineral estate includes the oil and gas estate.  This oil and gas estate is a property interest protected by the Fifth and Fourteenth Amendments to the United States Constitution.  But for the Ordinance, JAY and Yates would seek to lease their oil and gas estate to a corporation for the purposes of exploring for and extracting oil and natural gas, or otherwise seek to extract these minerals themselves.

9.      Plaintiff IPANM is a non-profit, membership, trade association organized under the laws of the State of New Mexico.  Formed in 1978, IPANM has over 300 members, who employ thousands of New Mexico residents.

10.     IPANM's purpose is to promote the general welfare and long-term interests of independent oil and natural gas producers, mineral and royalty owners, and the State of New Mexico.  IPANM seeks to accomplish its purposes by encouraging the discovery, development, production, and conservation of the oil and natural gas resources in New Mexico.  IPANM also seeks to accomplish its purposes by educating the public about the benefits provided by the oil and natural gas industry to the State and by responding to the misinformation disseminated by those who oppose the development of oil and natural gas resources and hydraulic fracturing.  For example, IPANM disseminates news, updates and information to its email distribution list of over 1000 persons who include federal, state and local legislators, regulators, educators, and members of the media.  IPANM also posts announcements and news updates to its website, www.ipanm.org, and distributes newsletters to its members, legislators, regulators, educators and the media.  IPANM hosts events to educate the public, policy makers and the media regarding oil and natural gas extraction in New Mexico.  IPANM also hosts industry events and conferences where industry members assemble to discuss and debate topics related to oil, natural gas, and hydrocarbon extraction in New Mexico.

11.     IPANM reviews and comments on state and federal regulations relating to oil, natural gas, and hydrocarbon extraction and has taken steps to submit official comments or appeal local, state, and federal regulations that are overbroad, duplicative, arbitrary and capricious, or otherwise unlawful.

12.     IPANM has, at least, one member who owns mineral interests in Mora County, which includes an oil and gas estate.  This member has leased those oil and natural gas rights.  This lease grants the lessee the right to explore for and extract oil and natural gas from the

4

mineral interests owned by this member within Mora County.  Therefore, by and through its

member, IPANM may be deemed a corporation that is seeking to engage in activities prohibited

by the Ordinance.

13.    IPANM members also hold valid oil and gas leases within Mora County,

including leases covering state public trust lands that were issued by the New Mexico

Commissioner of Public Lands.  But for the Ordinance, the IPANM members would exercise

their right to explore for and extract oil and natural gas within Mora County.  Therefore, by and

through its members, IPANM may be deemed a corporation that is seeking to engage in activities

prohibited by the Ordinance.

14.    Defendant Mora County, New Mexico is a territorial division of the State of New

Mexico with governing authority and powers to act under color of state law.  Under New Mexico

law, "[a] county is but a political subdivision of the State, and it possesses only such powers as

are expressly granted to it by the Legislature, together with those necessarily implied to

implement those express powers."  *El Dorado at Santa Fe, Inc. v. Board of Cnty Comm'rs of

Santa Fe Cnty.,* 551 P.2d 1360, 1364 (1976); *see N*.M. Stat. § 4-37-1.

15.    Defendant Mora County Board of County Commissioners has been vested with

authority under New Mexico law to exercise the county's political and corporate powers on its

behalf.  N.M. Stat. § 4-38-1.  Pursuant to New Mexico law, the Board of County Commissioners

consists of three elected commissioners.  *Id.* § 4-38-2; *see also* id. §§4-38-1 to 4-38-42.

16.    Defendant Paula A. Garcia is a Mora County Commissioner for District 1.

Defendant Garcia is sued in her official capacity.

17.     Defendant John P. Olivas is a Mora County Commissioner for District 2 and the Chairman of the Commission.  Defendant Olivas is sued in his official capacity.

18.     Defendant Alfonso J. Griego is a Mora County Commissioner for District 3 and the Vice-Chairman of the Commission.  Defendant Greigo is sued in his official capacity.

## FACTUAL ALLEGATIONS

### A.     OIL AND NATURAL GAS DEVELOPMENT.

19.     New Mexico has been a major producer of oil and natural gas since hydrocarbons were first discovered in the State during the early 1920s.

20.     The oil and gas industry, while primarily occupying the sparsely populated southeast and northwest areas of New Mexico, is a lynchpin of the State's economy and is essential for its continued fiscal health.  New Mexico's independent oil and natural gas producers are also known for the countless community projects, scholarships and mentorship programs, which make New Mexico a unique and wonderful place to work and live.  In 2012, the State of New Mexico derived more than 27 percent of its general fund revenues from taxes and royalties on oil, natural gas, and carbon dioxide production.  These taxes and royalties have contributed more than 90 percent of the principal in the Severance Tax and Land Grant Permanent Funds, the earnings on which are used to fund the common schools (including those in Mora Country), specific education or eleemosynary and institutions, and other state governmental operations.  Other petroleum tax receipts are placed directly in the State's general budget.  In addition, more than 88,000 citizens of the State are directly employed by the oil and gas industry.

**B.      MINERAL ESTATES IN NEW MEXICO.**

21.      New Mexico recognizes a mineral estate as an interest in real property, severable

from the surface estate.  *Johnson v. Gray*, 410 P.2d 948, 950 (N.M. 1966) (citing *Duvall v. Stone*,

213 P.2d 212, 216 (N.M. 1949); *Terry v. Humphreys,* 203 P. 539 (N.M. 1922)).  Mineral estates

may be conveyed, leased, or reserved.  *Id.*  Once severed, taxes are assessed against mineral

estates, separate from the taxes assessed against the surface estate.  *Sims v. Vosburg,* 91 P.2d

434, 435 (N.M. 1939).  All of the rights in a mineral estate are interests in real property, *Padilla*

*v. Roller*, 608 P.2d 1116, 1117 (1980), and therefore, protected by the Fifth and Fourteenth

Amendments to the United States Constitution.

**C.      HYDRAULIC FRACTURING.**

22.      Hydraulic fracturing is a process in which fluid is injected into a well bore at high

pressures in order to either widen and deepen existing cracks or create new fractures in

productive formations that contain oil and natural gas.

23.      Hydraulic fracturing is applied to the majority of the Nation's oil and natural gas

wells to enhance well performance, minimize drilling and recover otherwise inaccessible

resources.  In fact, roughly 90 percent of the wells in operation today have been fractured, and

the process continues to be applied in new and innovative ways to boost production of the

Nation's energy in unconventional formations, such as "tight" gas sands, shale deposits, and coal

beds.

24.      Hydraulic fracturing has been safely used for over sixty years, throughout the

United States and in the State of New Mexico.

25.     Types of fluid used for fracturing depend upon the rock type, depth or other factors such as well bore design.  Typically the fluids used are water based and contain "proppant," which is commonly sand of various sizes.  The proppant is carried into the productive formation where it remains in the newly created or enlarged fracture, keeping it open and allowing the oil or natural gas to flow.  In general, nearly 99.5 percent of the materials used in any given fracturing job are water and sand.  The remaining 0.5 percent is made up of chemicals that enhance the viscosity or thickness of the fluid, which helps carry the proppant.

26.     The use of hydraulic fracturing has been estimated to contribute to 30 percent of recoverable hydrocarbon reserves in the United States.  Fracturing is believed to provide an additional 5,600 trillion cubic feet of natural gas and seven billion barrels of oil that would not be recoverable without this process.

**D.      NEW MEXICO PUBLIC TRUST LANDS.**

27.     The Enabling Act of 1910, granted New Mexico its statehood, thereby granting the state authority to enact a state constitution and state laws.  Act of June 20, 1910, ch. 310, §§ 1–18, 36 Stat. 557.  The Enabling Act further transferred certain federal lands to the State of New Mexico to be held in trust for the benefit of public schools, including lands in Mora County.  Under Section 10 of the Enabling Act, New Mexico has the authority to sell or lease its state public lands, with proceeds from those sales or leases going towards public schools, public universities, and other public purposes.  *Id.* § 10.

28.     The intent and purposes of the Enabling Act are carried out in the New Mexico Constitution.  Article XIII of the New Mexico Constitution accepts the grant of public trust lands.  Article XIII, Section 2 provides that "[t]he commissioner of public lands shall select,

8

locate, classify and have the direction, control, care and disposition of all public lands, under the provisions of the acts of congress relating thereto and such regulations as may be provided by law."

29.     N.M. Stat. § 19-1-1 created the state land office and deemed the Commissioner of Public Lands the executive officer of the state land office.  This statute reiterates that the Commissioner has "jurisdiction over all lands owned . . . by the state."

30.     The Commissioner of Public Lands is authorized to lease any state land for oil and gas development on such terms as may be provided by the Legislature.  N.M. Const. art XXIV, § 1.   The legislature has expressly granted the Commissioner of Public Lands authority to issue oil and gas leases on lands received by the State under the Enabling Act.  N.M. Stat. § 19-10-1 (1941).  Under each of the oil and gas lease forms that the Commissioner of Public Lands is authorized to use, the lessee is granted the exclusive right on the specified state lands of "exploration, development and production of oil or gas (including carbon dioxide gas and helium), or both thereon and therefrom" together with various rights ancillary and attendant to the drilling for and production of oil and gas.  See, e.g., N.M. Stat. § 19-10-4.1 (1985).

E.     THE NEW MEXICO OIL AND GAS ACT.

31.     In 1978, New Mexico's state legislature, passed the New Mexico Oil and Gas Act, codified at N. M. Stat. §§ 70-2-1 through 70-2-38.  The Oil and Gas Act created the Oil Conservation Commission ("Commission") and Oil Conservation Division ("Division").  N.M. Stat. §§ 70-2-4, 70-2-5.  These bodies have been vested with "jurisdiction and authority over all matters relating to the conservation of oil and gas and the prevention of waste of potash as a result of oil or gas operations."  Id. § 70-2-6.  Further, the Commission and Division both have

9

"jurisdiction, authority and control of and over all persons, matters or things necessary or proper to enforce effectively the provisions of this act or any other law of this state relating to the conservation of oil or gas. . . ." *Id.*

32.     The Division regulates oil and natural gas extraction within the state as provided by Title 19, Chapter 15 of the New Mexico Code of Rules.  The Rules developed by the Division aim to protect, among other things, fresh water, public health, safety and the environment.  N.M. Code R. § 19.15.39.  The Rules also "establish safety procedures for drilling and production of oil and gas wells."  *Id.* § 19.15.10.6.  The Rules further consider the use of hydraulic fracturing within the state and include provisions that must be followed by all operators that engage in hydraulic fracturing in New Mexico.  *Id.* § 19.15.16.17; 19.15.15.19; 19.15.35.13 (D); 19.15.12.11 (A)(3).

**F.     MORA COUNTY ORDINANCE 2013-01.**

33.     On April 29, 2013, the members of the Mora County Board of County Commissioners voted 2-1 to enact the Ordinance, entitled "Mora County Community Water Rights and Local Self-Government Ordinance."  A copy of the Ordinance, as signed by Chairman John P. Olivas and Vice-Chairman Alfonso J. Griego is attached hereto as Exhibit 1.

34.     The Ordinance is expressly described as:

AN ORDINANCE PROTECTING THE RIGHT OF HUMAN COMMUNITIES, NATURE, AND NATURAL WATER, BY ESTABLISHING A LOCAL BILL OF RIGHTS FOR MORA COUNTY THAT PROTECTS THE NATURAL SOURCES OF WATER FROM DAMAGE RELATED TO THE EXTRACTION OF OIL, NATURAL GAS, OR OTHER  HYDROCARBONS, BY AFFIRMING THE RIGHT TO LOCAL AUTONOMY AND SELF- GOVERNANCE, AND *BY ELIMINATING LEGAL PRIVILEGES AND POWERS FROM CORPORATIONS VIOLATING THE ORDINANCE.*

(Emphasis added).

10

35.     The stated purpose of the Ordinance is as follows:

The People of the County of Mora are a cohesive community of diverse elements, united by common culture, social bonds and a common destiny, and are represented politically in various aspects by the Mora County Government, numerous Acequias, Land Grants and Mutual Domestic Water Consumers Associations.  The People of Mora County recognize that water is essential for the life, prosperity, sustainability, and health of their community and that damage to natural groundwater and surface water sources imposes great tangible loss, to the People, natural communities and ecosystems of Mora County, not just for today but for future generations.  The People of Mora County recognize that they may be forced, without their consent, to endure or attempt to repair harm inflicted on their environment and their vital water supply, which they have no equivalent governing authority to prevent under current state and federal law.  The governing body of Mora County adopts this Mora County Community Water Rights and Local Self-Government Ordinance to overcome that liability, to provide for community health and safety, to promote a sustainable lifestyle, and to secure the comfort and convenience of the people.

Ordinance Section 1.2.

36.     The real purpose of the Ordinance is to:  (1) the prevent the lawful development of oil and natural gas resources located within Mora County; (2) ban hydraulic fracturing in Mora County; and (3) eliminate the constitutional rights and privileges of corporations.

37.     Section 3.1 of the Ordinance defines "corporation" as "any corporation, limited partnership, limited liability partnership, business trust, or limited liability company organized under the laws of any state of the United States or under the laws of any country, and any other business entity that possesses State-conferred limited liability attributes for its owners, directors, officers, and/or managers."

38.     Section 3.2 of the Ordinance defines "extraction" as "the digging or drilling of a well for the purposes of exploring for, developing or producing oil, natural gas, or other hydrocarbons."

11

39.     Section 5.1 of the Ordinance declares that it "shall be unlawful for any corporation to engage in the extraction of oil, natural gas, or other hydrocarbons within Mora County."

40.     Section 5.2 of the Ordinance declares that it:

[S]hall be unlawful for any corporation to engage in the extraction of water from any surface or subsurface source within Mora County for use in the extraction of subsurface oil, natural gas, or other hydrocarbons, or for any director, officer, owner, or manager of a corporation to use a corporation to extract water from any surface or subsurface source, within Mora County, for use in the extraction of subsurface oil or natural gas or other hydrocarbons.  It shall be unlawful for a corporation to import water or any other substance, including but not limited to, propane, sand, and other substances used in the extraction of oil, natural gas, or other hydrocarbons, into Mora County for use in the extraction of subsurface oil, natural gas, or other hydrocarbons; or for any director, officer, owner, or manager of a corporation to do so.

41.     Section 5.3 declares that it:

[S]hall be unlawful for any corporation, or any director, officer, owner, or manager of a corporation to use a corporation to deposit, store, transport or process waste water, 'produced' water, 'frack' water, brine or other materials, chemicals or by-products used in the extraction of oil, natural gas, or other hydrocarbons, into the land, air or waters within Mora County.

42.     Section 5.4 declares that it:

[S]hall be unlawful for any corporation, or any director, officer, owner, or manager of a corporation to use a corporation to construct or maintain infrastructure related to the extraction of oil, natural gas, or other hydrocarbons within Mora County.  'Infrastructure' shall include, but not be limited to, pipelines or other vehicles of conveyance of oil, natural gas, or other hydrocarbons, and any ponds or other containments used for wastewater, 'frack' water, or other materials used during the process of oil, gas, or other hydrocarbon extraction.

43.     Section 5.5 of the Ordinance provides that:

Corporations in violation of the prohibitions enacted by this ordinance, or seeking to engage in activities prohibited by this ordinance, shall not have the rights of "persons" afforded by the United States and New Mexico Constitutions, nor shall those corporations be afforded rights under the 1st or 5th amendments to the United States Constitution or corresponding sections of the New Mexico

Constitution, nor shall those corporations be afforded the protections of the commerce or contracts clauses within the United States Constitution or corresponding sections of the New Mexico Constitution.

44.     Section 5.6 of the Ordinance provides that:

Individuals or corporations in violation of the prohibitions enacted by this ordinance, or seeking to engage in activities prohibited by this ordinance, shall not possess the authority or power to enforce State or federal preemptive laws against the people of Mora County, or to challenge or overturn County ordinances adopted by the Mora County Commission, when that enforcement or challenge interferes with the rights asserted by this ordinance or interferes with the authority of the county to protect the health, safety, and welfare of its residents.

45.     Section 5.7 of the Ordinance provides that no permits, licenses, privileges, or charters issued by any state or federal agencies, Commissions or Boards, which violate the provisions of the Ordinance, or "deprive any County resident(s), natural community, or ecosystem of any rights, privileges, or immunities secured by this Ordinance, the Treaty of Guadalupe Hildalgo, [sic] the New Mexico Constitution, the United States Constitution, or other laws, *shall be deemed valid within Mora County*."  (Emphasis added)

46.     Section 5.8 of the Ordinance limits the application of the United States and New Mexico Constitutions to the extent they "are not inconsistent with the provisions of this Ordinance regarding the powers and 'rights' of corporations, and to the extent that they do not otherwise elevate property interests over rights secured by this Ordinance."

47.     Section 8.1 of the Ordinance provides:

Any violation of any provision of this Ordinance shall be considered a criminal offense, punishable by maximum penalties and imprisonment as authorized by applicable New Mexico law.  Each instance of a violation of the provisions of this Ordinance shall be treated as a separate offense subject to penalties authorized by applicable New Mexico law.

48.     N.M. Stat. § 4-37-3 provides that the maximum penalty for violations of County Ordinances is a fine of three hundred dollars, or imprisonment for ninety days, or both.

49.     Section 8.2 of the Ordinance provides that "Mora County may enforce this Ordinance through an action brought in any court of competent jurisdiction.  In such an action, Mora County shall be entitled to recover all costs of litigation, including, without limitation, expert and attorney's fees, in addition to damages caused by the violation of this ordinance."

50.     Section 8.3 of the Ordinance provides "any County resident shall have the authority to enforce this Ordinance through an action brought in a court of competent jurisdiction.  In such an action, the resident shall be entitled to recover all costs of litigation, including, without limitation, expert and attorney's fees."

51.     Section 8.5 of the Ordinance provides that:

In the event that this ordinance is overturned or nullified, for any reason, a moratorium on the extraction of oil and gas within the County of Mora shall become effective on the date that this ordinance becomes inactive.  That temporary moratorium shall have a duration of no more than six months, during which the Board of County Commissioners shall adopt another ordinance which permanently bans hydrocarbon extraction within the County of Mora.

52.     Section 13 of the Ordinance provides that the provisions within the Ordinance are severable.  More specifically, the Ordinance provides that:

If any court of competent jurisdiction decides that any section, clause, sentence, part, or provision of this Ordinance is illegal, invalid, or unconstitutional, such decision shall not affect, impair, or invalidate any of the remaining sections, clauses, sentences, parts, or provisions of the Ordinance.  The Mora County Commission hereby declares that in the event of such a decision, and the determination that the court's ruling is legitimate, it would have enacted this Ordinance even without the section, clause, sentence, part, or provision that the court decides is illegal, invalid, or unconstitutional.

14

## FIRST CLAIM FOR RELIEF
### (Substantive Due Process)
### (Fourteenth Amendment)

53.     Plaintiffs reallege and incorporate by reference each and every allegation set forth above.

54.     The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits a State from "depriv[ing] any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.

55.     The Due Process Clause of the Fourteenth Amendment applies to local governments, such as counties.  *Pembaur v. City of Cincinnati,* 475 U.S. 469, 485 (1986) (ruling that counties may be held liable for violations of Fourteenth Amendment rights); *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 690 (1978) ("Local governing bodies, therefore, can be sued directly under [43 U.S.C.] § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.") (internal citations omitted).

56.     The Due Process Clause of the Fourteenth Amendment has two components that limit local government actions, i.e., the procedural due process component and the substantive due process component.

57.     "[T]he touchstone of due process is protection of the individual against arbitrary action of government." *County of Sacramento v. Lewis,* 523 U.S. 833, 845 (1998) (quoting *Wolff v. McDonnell,* 418 U.S. 539, 558 (1974)).  The substantive due process clause essentially asks whether the government has an adequate reason for depriving a person of life, liberty, or

property and "bar[s] certain government actions regardless of the fairness of the procedures used

to implement them." *Daniels v. Williams,* 474 U.S. 327, 331 (1986).  The rights protected by the

substantive due process clause are rights "so rooted in the traditions and conscience of our

people as to be ranked as fundamental."  *Snyder v. Massachusetts,* 291 U.S. 97, 105 (1934).

58.     Property rights are fundamental rights.  As such, property interests and

concomitant property rights are explicitly protected from government infringement by the

Fourteenth Amendment.  *See Reno v. Flores,* 507 U.S. 292, 301–02 (1993).  The Supreme Court

"interprets the Fifth and Fourteenth Amendments' guarantee of "due process of law" to include a

substantive component, which forbids the government to infringe certain "fundamental" liberty

interests *at all,* no matter what process is provided, unless the infringement in narrowly tailored

to serve a compelling state interest." *Id.* (emphasis in original) (citing *Collins v. Harker Heights,*

503 U.S. 115, 125 (1992); *Salerno,* 418 U.S. at 746; *Bowers v. Hardwick*, 478 U.S. 186, 191

(1986)); *Washington v. Glucksberg,* 521 U.S. 702, 721 (1997).  This standard of review is known

as the strict scrutiny standard.

59.     "Property interests are not created by the Constitution, 'they are created and their

dimensions are defined by existing rules or understanding that stem from an independent source

such as state law. . . . '" *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538 (1985)

(quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

60.     New Mexico recognizes a mineral estate as an interest in real property, severable

from the surface estate.  *Johnson,* 410 P.2d at 950.  Mineral estates may be conveyed, leased, or

reserved.  *Id.*  The mineral estate includes estates in particular minerals, such as the oil and gas

estate.  The oil and gas estate includes the following rights:  the right to explore for and produce

16

the oil and natural gas, the right to access the surface, the right to execute an oil and gas lease, and the right to receive bonuses, delay rentals, and royalties. *HNG Fossil Fuels Co*, 656 P.2d at 882. The right to execute an oil and gas lease, commonly referred to as the executory right, is one of the primary sticks in the bundle of rights comprising the oil and gas estate.

61.     Section 5.1 of the Ordinance makes it unlawful for corporations to extract oil, natural gas, or other hydrocarbons in Mora County.

62.     Section 5.2 of the Ordinance makes it unlawful for corporations to use surface or subsurface water in oil, natural gas, or other hydrocarbon extraction. Corporations are further prohibited from importing water or any other substances into Mora County for use in oil, natural gas, or other hydrocarbon extraction.

63.     Section 5.4 of the Ordinance makes it unlawful for corporations and their directors, officers, owners, or managers to construct or maintain infrastructure relating to the extraction of oil, natural gas, or other hydrocarbons.

64.     Plaintiff Mary L. Vermillion owns property in Mora County. Ms. Vermillion owns a mineral estate in this tract. This mineral estate is a property right protected by the Fifth and Fourteenth Amendments to the United States Constitution. But for the Ordinance, Ms. Vermillion would seek to exercise her executory right and lease her minerals to a corporation for the purposes of extraction.

65.     Plaintiffs JAY and Yates own the Ojo Feliz Ranch in Mora County. JAY and Yates also own a mineral estate in this tract. This mineral estate is a property right protected by the Fifth and Fourteenth Amendments to the United States Constitution. But for the Ordinance, JAY and Yates would seek to exercise their executory right and lease their minerals to a

17

corporation for the purposes of extraction, or otherwise engage in exploration and extraction activities.

66.     IPANM has members who own mineral interests, including oil and natural gas, in Mora County.  Some of these members have leased their mineral interests.  These leases give lessees the right to explore for and extract any oil and natural gas beneath the lease acreage.  The lease rights are protected by the Fifth and Fourteenth Amendments to the United States Constitution.

67.     IPANM also has members who hold leases on property in Mora County, including leases executed by the Commissioner of Public Lands for public trust lands.  These lessees have the right to explore for and develop any oil, natural gas, or other hydrocarbons found on their leases.  These rights are protected by the Fifth and Fourteenth Amendments to the United States Constitution.  But for the Ordinance, these members would exercise their valuable lease rights.

68.     The Ordinance does not serve a compelling state interest.  The purpose of the Ordinance has been veiled to appear as though it is in the interest of public health, safety, morals, or general welfare.  The preamble to the Ordinance provides that the citizens of Mora have a "duty to safeguard the water both on and beneath the Earth's surface."  However, the true purpose of the Ordinance is to prevent the lawful development of oil and natural gas and to ban hydraulic fracturing within Mora County.   If Defendants' true goal was to protect surface and groundwater supplies within the County, the Ordinance would address other industries that are known sources of water pollution, such as the agricultural industry.  Pesticides and fertilizers contaminate surface and groundwater, yet the Ordinance does not regulate any other industries

having the potential to pollute sources of drinking water.  Therefore, the Ordinance does not further a compelling state interest.

69.    Even if the goal of protecting water sources is taken as sincere and found to be sufficiently compelling, the blanket elimination of the First and Fifth Amendment rights of corporations engaging or seeking to engage in activities prohibited by the Ordinance is not narrowly tailored to achieving that interest.  Mora County could ensure water sources are adequately protected through much less restrictive means.  The ban reaches all aspects of oil and natural gas industry by prohibiting nearly all activities related to oil and natural gas extraction. The Ordinance includes broad and extreme eradication of the First and Fifth Amendment rights of any corporation that engages in a prohibited activity.  Therefore, the Ordinance is not narrowly tailored.

70.    Even if this court does not accept property as a fundamental right, the Ordinance is unable to withstand the less rigorous test of intermediate scrutiny.  Intermediate scrutiny requires government actions which burden constitutionally protected rights to be substantially related to the achievement of an important governmental objective.  *Adarand Constructors, Inc. v. Peña*, 515 U.S. 200, 220 (1995); *Clark v. Jeter*, 486 U.S. 456, 461 (1988).

71.    The Ordinance is not substantially related to the achievement of an important governmental objective.  Banning oil and natural gas extraction within the County does not constitute an important governmental objective.  Even if the governmental objective of protecting water sources is taken as sincere, the act of eliminating the First and Fifth Amendment rights of corporations that engage in oil and natural gas extraction activities is not substantially related to that objective.

19

72.     The Ordinance also fails the rational basis test because it is not rationally related to a legitimate state interest.  *See Seegmiller v. LaVerkin City,* 528 U.S. 762, 771–72 (10th Cir. 2008) (citing *Reno*, 507 U.S. at 305).  Even assuming Defendant's interest in protecting water sources is legitimate, the act of eliminating the First and Fifth Amendment rights or corporations that engage in oil and natural gas extraction activities is not rationally related to that interest.

73.     Because the Ordinance cannot survive any level of scrutiny, it must be declared unconstitutional and permanently enjoined in its entirety.

74.     The presence of a severability clause in the Ordinance does not change this outcome.  *Bradbury & Stamm Constr. Co. v. Bureau of Revenue,* 70 N.M. 226, 230–31, 372 P.2d 808, 811 (1962).; *Baca v. New Mexico Dept. of Safety*, 47 P.3d 441, 444 (N.M. 2002).  *Alaska Airline, Inc. v. Brock*, 480 U.S. 978, 685 (1987) (citing *Hill v. Wallace,* 259 U.S. 44, 70–72 (1922)).

75.     Defendants would not have enacted the Ordinance without all of the provisions outlawing oil and natural gas extraction within Mora County.  In addition, the valid and invalid provisions of the Ordinance are so intertwined, that the Ordinance would be rendered meaningless if the offending portions were severed.

76.     This is especially true with respect to Section 8.5, which provides:

> In the event that this ordinance is overturned or nullified, for any reason, a moratorium on the extraction of oil and gas within the County of Mora shall become effective on the date that this ordinance becomes inactive.  That temporary moratorium shall have a duration of no more than six months, during which the Board of County Commissioners shall adopt another ordinance which permanently bans hydrocarbon extraction within the County of Mora.

77.     If Section 8.5 were allowed to stand, it would nullify the effect of striking down the Ordinance in its entirety.  Therefore, to prevent continuing harm to Plaintiffs' constitutionally protected rights, this Court must strike down the Ordinance in its entirety and expressly enjoin Defendants from enforcing Section 8.5.

78.     Under 42 U.S.C. § 1983, every person who, under color of state law, subjects any citizen of the United States to the deprivation of "rights, privileges, or immunities secured by the Constitution and laws," shall be liable to the injured party.

79.     Because the Ordinance deprives Plaintiffs of their rights, privileges and/or immunities as secured by the Fourteenth Amendment, Defendants are liable to Plaintiffs under 42 U.S.C. § 1983.

80.     Plaintiffs have no adequate legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to their constitutional rights.

81.     Plaintiffs are therefore entitled to declaratory and permanent injunctive relief pursuant to 28 U.S.C. §§ 2201, 2202.

## SECOND CLAIM FOR RELIEF
### (First and Fourteenth Amendments)

82.     Plaintiffs reallege and incorporate by reference each and every allegation set forth above.

83.     The First Amendment to the United States Constitution provides "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I.

84.     The First Amendment's guarantees of freedom of speech, freedom of the press, freedom of assembly, and freedom to petition for redress of grievances are "protected by the Fourteenth Amendment from invasion by the states[,]" and their political subdivisions, such as counties.  *Edwards v. South Carolina,* 372 U.S. 229, 235 (1963) (citing *Gitlow v. New York,* 268 U.S. 652 (1937); *Whitney v. California*, 274 U.S. 357 (1927); *Stromberg v. California,* 283 U.S. 359 (1931); *DeJonge v. Oregon*, 299 U.S. 353 (1937); *Cantwell v. Connecticut,* 310 U.S. 296 (1940)).

85.     The First Amendment's guarantees of freedom of speech, freedom of the press, freedom of assembly, and freedom to petition for redress of grievances, as protected by the Fourteenth Amendment from invasion by the states and their political subdivisions, enures to the benefit of Plaintiff Mary L. Vermillion, corporate Plaintiffs JAY and Yates, and IPANM (a corporation), and its corporate members.  *See Citizens United v. Fed. Election Comm'n*, 558 U.S. 318, 340 (2010).

86.     Although the First Amendment protects multiple fundamental rights related to freedom of speech, the Supreme Court has held:

> [T]he rights to assemble peaceably and to petition for a redress [of] grievances are among the most precious of the liberties safeguarded by the Bill of Rights.  These rights, moreover, are intimately connected both in origin and in purpose, with the other First Amendment rights of free speech and free press.  All these, though not identical, are inseparable.  The First Amendment would, however, be a hollow promise if it left government free to destroy or erode its guarantees by indirect restraints so long as no law is passed that prohibits free speech, press, petition, or assembly as such.  We have therefore repeatedly held that laws which actually affect the exercise of these vital rights cannot be sustained merely because they were enacted for the purpose of dealing with some evil within the State's legislative competence, or even because the laws do in fact provide a helpful means of dealing with such an evil.

*United Mine Workers of America, Dist. 12 v. Illinois State Bar Ass'n.,* 389 U.S. 217, 222 (1967) (internal quotations and citations omitted).

87.     In the context of the First Amendment, a law is void if it is overbroad.  *United States v. Salerno,* 481 U.S. 739, 745 (1987).  A statute may only be invalidated following a facial challenge if a court finds the overbreadth "substantial."  *Board of Airport Comm'rs of City of Los Angeles v. Jews for Jesus, Inc.,* 482 U.S. 569, 574 (1987) (citing *Houston v. Hill,* 482 U.S. 451, 458-459 (1987); *New York v. Ferber,* 458 U.S. 747, 769 (1982); *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973)).

88.     The Supreme Court has held that "[t]he first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers."  *United States v. Williams*, 553 U.S. 285, 293 (2008).

89.     "Under the First Amendment overbreadth doctrine, an individual whose own speech or conduct may be prohibited is permitted to challenge a statute on its face 'because it also threatens others not before the court-those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid.'" *Board of Airport Comm'rs of City of Los Angeles,* 482 U.S. at 574 (quoting *Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 503 (1985)).  Therefore, an overbreadth challenge is proper so long as there is "a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court."  *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984).

90.     A resolution or ordinance that does not merely regulate expressive activity, but instead expansively prohibits First Amendment activities cannot be justified "because no conceivable governmental interest would justify such an absolute prohibition of speech." *Board of Airport Comm'rs of City of Los Angeles,* 482 U.S. at 575.

91.     Under Article III of the United States Constitution, Plaintiffs have standing to bring this action to vindicate their First Amendment rights and the First Amendment rights of IPANM's corporate members that seek to engage in activities prohibited by the Ordinance.  *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977) (An organization has Article III "standing to bring suit on behalf of its members when:  (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.").

92.     Under Supreme Court rulings, Plaintiffs also have standing to challenge the Ordinance directly because of the Ordinance's possible chilling effect on protected speech. More specifically, those who desire to engage in constitutionally protected forms of expression may choose to refrain rather than risking criminal repercussions or challenging the Ordinance themselves. *Board of Airport Comm'rs of City of Los Angeles,* 482 U.S. at 574.

93.     Section 5.5 of the Ordinance eliminates the First and Fifth Amendment rights of corporations "seeking to engage in activities prohibited by this ordinance."

94.     Plaintiffs JAY and Yates are corporate owners of a mineral estate in Mora County.  As the owners of a mineral estate, JAY and Yates have the right to assign their mineral estate to third parties, who will drill wells, explore for, and extract any oil and natural gas found

beneath their property.  JAY and Yates also have a right to search for and develop oil and natural

gas on the Ojo Feliz Ranch themselves.  But for the Ordinance, JAY and Yates would seek to

lease or develop their mineral estate.  Therefore, JAY and Yates may be deemed corporations

"seeking to engage in activities prohibited by" the Ordinance.  Accordingly, Section 5.5 of the

Ordinance deprives JAY and Yates of their First Amendment rights to freedom of speech,

freedom of the press, freedom of assembly, and freedom to petition for redress of grievances.

95.    IPANM has corporate members that seek to engage in activities prohibited by the

Ordinance, such as drilling for and extracting oil and natural gas within Mora County.

96.    IPANM has corporate members who hold valid oil and gas leases in Mora

County, including leases for public trust land issued by the Commissioner of Public Lands.

These members wish to exercise their valuable lease rights by drilling for and extracting the oil

and natural gas resources under their leased acreage.  IPANM further has members who would

seek to engage in the construction and maintenance of infrastructure relating to oil and natural

gas production within Mora County, but for the Ordinance.  Therefore, IPANM has corporate

members who seek to engage in activities prohibited by the Ordinance.

97.    Plaintiff IPANM regularly hosts educational events, conferences, and debates for

its members and industry groups.  IPANM members regularly assemble to attend these events.

IPANM exercises its corporate rights to freedom of speech to inform the public and encourage

debate about local, state, and federal regulation of the oil and natural gas industry.  IPANM

exercises its corporate right to freedom of press by publishing news and information on its

website regarding oil and natural gas exploration and extraction activities that are of interest to

its members and the general public.  IPANM also distributes informational newsletters to its

members.  As a trade association with corporate members that wish to engage in First Amendment activities prohibited by the Ordinance, Section 5.5 of the Ordinance denies IPANM and its member their First Amendment rights of freedom of speech, freedom of the press, freedom of assembly, and freedom to petition for redress of grievances.

98.     In light of the Supreme Court's holding that "no conceivable governmental interest would justify such an absolute prohibition of speech," the text of Section 5.5 is substantially overbroad and no circumstances exist, under which a blanket elimination of Plaintiffs' First Amendment rights can be justified.  *Board of Airport Comm'rs of City of Los Angeles,* 482 U.S.at 575.

99.     Defendants have no governmental interest so compelling as to justify the denial of Plaintiffs' rights as guaranteed by the First Amendment to the United States Constitution.  As such, the Ordinance is overly broad.

100.    Under 42 U.S.C. § 1983, every person who, under color of state law, subjects any citizen of the United States to the deprivation of "rights, privileges, or immunities secured by the Constitution and laws," shall be liable to the injured party.

101.    The Ordinance is overly broad and deprives Plaintiffs of their First Amendment rights of freedom of speech, freedom of the press, freedom of assembly, and freedom to petition for redress of grievances in contravention of the Fourteenth Amendment.  Therefore, Defendants are liable to Plaintiffs under 42 U.S.C. § 1983.

102.    Plaintiffs have no adequate legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to their constitutional rights.

26

103.     Plaintiffs are therefore entitled to declaratory and permanent injunctive relief pursuant to 28 U.S.C. §§ 2201, 2202.

### THIRD CLAIM FOR RELIEF
**(Preemption)**

104.     Plaintiffs reallege and incorporate by reference each and every allegation set forth above.

105.     The legislature in New Mexico has granted all counties "the same powers that are granted municipalities except for those powers that are inconsistent with statutory or constitutional limitations placed on counties."  N.M. Stat. § 4-37-1.

106.     In New Mexico, "[t]he governing body of a municipality may adopt ordinances or resolutions *not inconsistent with the laws of New Mexico.*"  N.M. Stat. § 3-17-1 (emphasis added).

107.     "[A]ny New Mexico law that clearly intends to preempt a governmental area should be sufficient without necessarily stating that affected municipalities must comply and cannot operate to the contrary."  *Casuse v. City of Gallup*, 746 P.2d 1103, 1105 (N.M. 1987) (*citing Westgate Families v. County Clerk of Los Alamos,* 667 P.2d 453 (1983)).

108.     Under the Enabling Act of 1910, the New Mexico Constitution, and the statutes based thereupon, the Commissioner of Public Lands has the authority and duty to lease and sell State lands, including issuing oil and gas leases, for the benefit of the common schools, other educational institutions, and other worthy state functions that benefit less fortunate citizens of the State of New Mexico.

109.     The New Mexico Oil and Gas Act further confers authority over oil and natural gas extraction within the state to the Oil Conservation Commission and Oil Conservation

27

Division.  N.M. Stat. §§ 70-2-4, 70-2-5.  This authority includes the ability to enact rules to

"protect fresh water, public health, safety and the environment," N.M. Code R. § 19.15.39, and

to "establish safety procedures for drilling and production of oil and gas wells."  N.M. Code R. §

19.15.10.6.

110.    IPANM has corporate members who hold valid oil and gas leases in Mora

County, including leases for public trust land issued by the Commissioner of Public Lands.  But

for the Ordinance, these members would seek to exercise their valuable lease rights by drilling

for and extracting the oil and natural gas, and other hydrocarbons under their leased acreage.

111.    By prohibiting the extraction of oil, natural gas, and other hydrocarbons, the

Ordinance nullifies valid existing oil and gas leases, including leases issued by the

Commissioner of Public Lands.  As a result, the Ordinance is in actual conflict with the Enabling

Act, the New Mexico Constitution, and the Commissioner of Public Lands state's exclusive

administration of public trust lands.

112.    By prohibiting all oil, natural gas, and other hydrocarbon exploration and

extraction related activities within Mora County, the Ordinance is in actual conflict with the New

Mexico Oil and Gas Act and the body of rules created by the Oil Conservation Division, which

already occupy the field.  Defendants lack authority to interfere with the exclusive jurisdiction of

the Oil Conservation Commission and Oil Conservation Division.

113.    Defendants enacted the Ordinance, under color of state law, which conflicts with

the Commissioner of Public Land's complete dominion over public trust lands and the duties of

the both Oil Conservation Commission and Oil Conservation Division to oversee oil and natural

gas production within the state.  The Ordinance conflicts directly with the Enabling Act, the New

Mexico Constitution, the New Mexico Oil and Gas Act, and New Mexico Rules, Title 19, Chapter 15.

114.     In enacting the Ordinance, Defendants acted in excess of any statutory authority conferred upon them under N.M. Stat. § 4-37-1.  Defendants further violated N.M. Stat. § 3-17-1 by enacting the Ordinance, which is inconsistent with the laws of New Mexico.

115.     Plaintiffs have no adequate legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to their rights.

116.     Plaintiffs are therefore entitled to a determination that the Enabling Act, the New Mexico Constitution, the New Mexico Oil and Gas Act and other State rules regulating oil and natural gas conservation and production preempt the Ordinance and therefore, the Ordinance is invalid, unlawful, and unenforceable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

1.     Entry of judgment declaring that Mora County Ordinance 2013-01 deprives Plaintiffs of their property rights and thus, Plaintiffs are deprived of their rights, privileges and/or immunities secured by the Fourteenth Amendment to the United States Constitution, and therefore, Defendants are liable to Plaintiffs under 42 U.S.C. § 1983;

2.     Entry of judgment declaring that Mora County Ordinance 2013-01 deprives Plaintiffs of their rights guaranteed by the First Amendment as applied to Defendants through the Fourteenth Amendment, and therefore, Defendants are liable to Plaintiffs under 42 U.S.C. § 1983;

29

3.      Entry of judgment declaring that Mora County Ordinance 2013-01 violates and is preempted by the Enabling Act of 1910, the New Mexico Constitution, the New Mexico Oil and Gas Act, and New Mexico Rules, Title 19, Chapter 15;

4.      Entry of judgment declaring that Defendants exceeded their authority under N.M. Stat. §§ 3-17-1, 4-37-1 in enacting Mora County Ordinance 2013-01;

5.      Entry of judgment permanently enjoining Defendants and their agents and/or employees from enforcing Mora County Ordinance 2013-01;

6.      Award Plaintiffs their costs, expenses, and attorneys' fees in accordance with law, including 42 U.S.C. § 1988; and

7.      Award Plaintiffs such further relief as is just and equitable.

DATED this 11th day of November 2013.

Respectfully Submitted by:

/s/ Andrew J. Cloutier
Andrew J. Cloutier
Hinkle, Hensley, Shanor & Martin LLP
400 Penn Plaza, Suite 700
Roswell, New Mexico  88201
Phone (575) 622-6510
Fax: (575) 623-9332
drew@hinklelawfirm.com

Steven J. Lechner
Jaimie N. Cavanaugh
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, Colorado  80227
Phone (303) 292-2021
Fax (303) 292-1980
lechner@mountainstateslegal.com
jcavanaugh@mountainstateslegal.com

Attorneys for Plaintiffs